IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CARL JUNCTION R-1 SCHOOL DISTRICT,<br>Plaintiff, | ) | |
| vs. | ) | Case No.: 05-3L<br>Judge Robert H. Hodges, Jr. |
| UNITED STATES OF AMERICA,<br>Defendant, | ) | |

**PROPOSED FINDINGS OF UNCONTROVERTED FACT TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Comes Now the Plaintiff, the Carl Junction R-1 School District, by and through its counsel, pursuant to Ct. Claims Rule 56(h)(1), and herewith submits its Proposed Findings of Uncontroverted Fact in support of its Motion and Suggestions in Support of Partial Summary Judgment as follows:

**PROPOSED FINDINGS OF UNCONTROVERTED MATERIAL FACT**

**I. PRELIMINARY AND JURISDICTIONAL FACTS**

1. The Plaintiff, Carl Junction R-1 School District (referred to as the "District" or "Plaintiff"), is an organized and existing Missouri statutory school district, located in Jasper County, Missouri and owns real property in the county, through which the Burlington Northern and Santa Fe Railroad ("BNSF") and its historical predecessors possessed a 100 foot railroad right-of-way for railroad purposes. (Plaintiff's Complaint ¶ 2; Proposed Findings ¶¶ 2 – 5, 16, infra).

2. The Carl Junction R-1 School District owns real property on the western side of the City of Carl Junction, Missouri. The former BNSF right-of-way divides the primary and junior high campus from the high school campus and also contains a second set of tracks called a sidetrack, known as the "Lehigh" siding, that is located on the southern side of the right-of-way and runs hundreds of feet parallel to the former BNSF main line on its own rail bed. (Complaint ¶ 25; Proposed Findings ¶ 3).

3. The District owns real property in Jasper County, Missouri acquired by Warranty Deed dated March 7, 1960 from William and Helen Harl which borders the aforementioned BNSF right of way legally described as follows:

> Lots 133, 134, 135, 138, 139, 140 and 141 except railroad right of way in Town of Lehigh

(Jasper County, Missouri Recorder of Deeds Book 930, Page 589; Ex. 1).

4. The District owns real property in Jasper County, Missouri acquired by Warranty Deed dated January 15, 1975 from Elsie Mae Leonard which borders the aforementioned BNSF right of way legally described as follows:

> Beginning at a point which is 557 feet West of the Northeast corner of the Northwest Quarter of the Southeast Quarter of Section 6, Township 28 North, Range 33 West of the 5th Principal Meridian Jasper County, Missouri said point being the point of intersection of centerline of Highway Z and centerline Verbryck Avenue, thence North 89º 57' West along Centerline of Highway Z 1089 feet, thence South 1945.20 feet to a point on the North right-of-way line of the San Francisco Railroad, thence North 63º 48' East along said North Right-of-Way line of said railroad 1213.50 feet to a point on the Centerline of Verbryck Avenue thence North along the centerline of said Verbryck Avenue 1408.45 feet to the point of beginning Except Right-of-Way for Highway Z on the North and Verbryck Avenue on the East.

(Jasper County, Missouri Recorder of Deeds Book 1179, Page 492-493; Ex. 2).

5. The District owns real property in Jasper County, Missouri acquired by Warranty Deed dated January 28, 1976 from Elsie Mae Leonard which borders the aforementioned BNSF right of way legally described as follows:

> All of the West (18) acres of the tract of land described by metes and bounds as beginning at a point which is 557 feet West of the Northeast corner of the Northwest Quarter (NW¼) of the Southeast Quarter (SE¼) of Section 6, Township 28 North, Range 33 West of the 5th Principal Meridian Jasper County, Missouri said point being the point of intersection of centerline of Highway Z and centerline Verbryck Avenue, thence North 89º 57' West along Centerline of Highway Z 1089 feet, thence South 1945.20 feet to a point on the North right-of-way line of the San Francisco Railroad, thence North 63º 48' East along said North Right-of-Way line of said railroad 1213.50 feet to a point on the Centerline of Verbryck Avenue thence North along the centerline of said Verbryck Avenue 1408.45 feet to the point of beginning, which tract contains 40 acres excluding Right-of-Way taken for Highway Z on the North and Verbryck Avenue on the East.

(Jasper County, Missouri Recorder of Deeds Book 1187, Page s; Ex. 3).

6. The BNSF filed a Notice of Exemption of the Line with the Surface Transportation Board ("STB") on or about May 3, 2002 to initiate the formal process for abandonment of the Line; STB Docket No. AB-6 (Sub No. 395X). (Admission of Defendant – Defendant's Answer ¶ 13, Plaintiff's Complaint ¶ 13).

7. On May 10, 2002, the City of Carl Junction, Missouri and the Joplin Trail Coalition ("JTC"), represented by the same counsel, jointly filed comments before the STB, in part, requesting the issuance of a Notice of Interim Trail Use ("NITU") and the imposition of a public use condition pursuant to 49 C.F.R. 1152.28 and 49 U.S.C. 10905 for the purpose of railbanking public use of the existing railroad railbed based upon the express condition that the STB order the BNSF to not remove any bridges, trestles, culverts or "roadbed materials" for the Missouri portion of the rail corridor; MP 331.23 to

MP 315.30. (Admission of Defendant – Defendant's Answer ¶ 14, Plaintiff's Complaint ¶ 14).

8. On the same date, May 10, 2002, the JTC and the City of Carl Junction, Missouri filed, before the federal STB, a document entitled "Statement of Willingness to Assume Financial Responsibility" ("Statement of Willingness"). (Admission of Defendant – Defendant's Answer ¶ 15, Plaintiff's Complaint ¶ 15).

9. These Statements of Willingness, authored by purportedly authorized representatives of the respective commenters and, at least, ostensibly cloaked with corporate or other legal authority, simultaneously stated that each was, ". . . willing to assume full responsibility for management of, for any legal liability arising out of and for the payment of any and all taxes that may be levied or assessed against the right-of-way . . ."; a distance of 15.93 miles from the Kansas state line to near Carthage, Missouri. (Admission of Defendant – Defendant's Answer ¶ 16, Plaintiff's Complaint ¶ 16).

10. On May 23, 2002, BNSF's Notice of Exemption was served and published in the Federal Register and the exemption was scheduled to become effective on June 22, 2002. (67 FR 36298).

11. On June 21, 2002, the STB issued a Decision that granted the commenters' request for issuance of a NITU and a public use condition. (Admission of Defendant – Defendant's Answer ¶ 18, Plaintiff's Complaint ¶ 18).

12. On December 19, 2002, the STB issued a Decision and Notice of Interim Trail Use or Abandonment that extended the time to consummate an agreement by and

between the commenters and the BNSF. (Admission of Defendant – Defendant's Answer ¶ 19, Plaintiff's Complaint ¶ 19).

13. On June 16, 2003, BNSF and JTC executed a document entitled, "**INTERIM TRAIL USE/RAILBANKING AND DONATION AGREEMENT**" ("Agreement"), and incorporated herein by this reference. (Admission of Defendant – Defendant's Answer ¶ 20, Plaintiff's Complaint ¶ 20).

14. The Agreement purports to transfer BNSF's interests to the JTC, and upon notice, to the City of Carl Junction, Missouri, provided the City execute written acknowledgment of the Agreement and agree to be bound to its terms. (Admission of Defendant – Defendant's Answer ¶ 21, Plaintiff's Complaint ¶ 21).

15. On October 20, 2003, the BNSF posted a letter to the STB advising of the consummation of a railbanking agreement with the JTC. The BNSF further represented that, " The remainder of the right of way has been salvaged and BNSF's discontinuance of the subject line will be consummated on October 31, 2003." (Admission of Defendant – Defendant's Answer ¶ 22, Plaintiff's Complaint ¶ 12).

16. On September 16, 2004, the BNSF conveyed to the JTC by Quit Claim Deed, "all of its right, title and interest, if any, in real estate subject however to all existing interests, including but not limited to all reservations, rights-of -way and easements, of record or otherwise, located in the County of Jasper, State of Missouri . . . between the Kansas /Missouri state line and Milepost 315.30 near Carthage encompassed in STB Docket AB-6 (Sub-No. 395X)." (Jasper County, Missouri Recorder of Deeds, Book 1884, Pages 1701-1707, Exhibit 4).

**II. HISTORICAL FACTS CONCERNING THE COMMENCEMENT OF RAILROAD ERA IN JASPER COUNTY, MISSOURI BY THE MEMPHIS, CARTHAGE AND NORTHWESTERN RAILROAD COMPANY.**

17. The 1853 General Railroad Corporate Law provided that real estate a railroad "received by voluntary grant shall be held and used for the purpose of such grant only" and said statutory law is currently located at 388.210(2) RSMo. (Laws of 1853 P.121, s 28 sub-paragraph 2d p. 134; L.1866, p. 27, §2; S 5128, R.S. 1939 RSMo. s. 4655 p. 2072).

18. The Memphis, Carthage and Northwestern Railroad was formed as a Missouri corporation on July 24, 1871 by local citizens. (Missouri Secretary of State website, www.sos.mo.gov/businessentity; Charter No. R00000104; Ex. 5; "*The Biographical Record of Jasper County, Missouri*", McGregor, Malcolm G., The Lewis Publishing Co. (Chicago, 1901), pp. 26-7).

19. "The Memphis, Carthage and Northwestern Railroad" was consolidated several times, including a January 20, 1872 consolidation with the State Line, Oswego and Southern Kansas Railroad Company (Ex. 6), a Kansas corporation, and eventually the consolidated company became the "Memphis, Carthage and Northwestern Railroad" on April 13, 1872 for the purpose of constructing and operating a railroad from Pierce City, Lawrence County, Missouri to Carthage, Jasper County, Missouri and westward into the State of Kansas. (Ex. 7). (Missouri Secretary of State website, www.sos.mo.gov/businessentity; Charter No. R00000120; July 24, 1871; January 20, 1872; April 13, 1872 documents).

20. The "Memphis, Carthage and Northwestern Railroad Company" initiated condemnation proceedings in the Jasper County, Missouri Circuit Court in 1871

throughout Jasper County, Missouri for the roadbed and eventual construction of the railroad track. An original condemnation Petition brought by the railroad, dated December 5, 1871, is extant for the southwestern portion of the Jasper County, Missouri proceedings brought by the Memphis, Carthage and Northwestern Railroad and is the first condemnation action brought by railroad. (Ex. 8). The published notice of the condemnation Petition in a local newspaper, *The Carthage Banner*, is also attached, including the proof of publication. (Ex. 9). The Civil Summons issued in the case by the Court compelled each of those served to, ". . . answer the Petition of the Memphis, Carthage and Northwestern Railroad Company who seek to appropriate a right of way 100 feet wide through lands claimed by said [landowner] . . ." (Ex. 10).

21. The Memphis, Carthage and Northwestern Railroad Company subsequently initiated several other condemnation actions that are, in some form, extant. On January 25, 1872 and May 8, 1872, respectively, the railroad filed separate condemnations actions against Alma D. Woolson (*Carthage Banner* – "Notice", February 1, 1872 – Ex. 11), Amos Bailey et al. (*Carthage Banner* – "Notice", May 16, 1872 – Ex. 12), *Collier v. Memphis, Carthage and Northwestern Railroad Company*, December 18, 1874 (Ex. 13) and *Memphis, Carthage and Northwestern Railroad Company v. Deaver*, January 4, 1875 (Ex. 13).

22. In the October 1882 term of the United States Supreme Court, it heard the case *Burgess v. Seligman*, 107 U.S. 20; 2 S. Ct. 10; 27 L. Ed. 359 (1883). The Court, discussing the creation, financing for and demise of the Memphis, Carthage and Northwestern Railroad Company and the relationship of the railroad, J. & W. Seligman &

Co., Joseph Seligman and Josiah Macy, Jr., stated the following as part of the Supreme Court's factual findings, in relevant part,

> "The Memphis, Carthage, and Northwestern Railroad Company was a corporation organized under the general laws of Missouri, with an authorized capital of $10,000,000. On the 10th of March, 1872, a contract in writing was entered into between the corporation and J. & W. Seligman & Co. (the defendants), which is set forth in the findings. In the recitals of this contract it was stated that certain municipal subscriptions, in the shape of bonds, to the amount of $645,000, had been obtained in aid of its construction; and that a portion of the road (27 miles) was already graded, bridged, and tied, and the right of way obtained, and all paid for by the proceeds of said subscriptions, and that the company now sought additional capital for procuring iron and equipment for the road by the sale of its first-mortgage bonds: it was, therefore, agreed that the railroad company should furnish the capital necessary to completely prepare the road for the iron, and would execute and deposit with the defendants their entire issue of first-mortgage bonds, to wit, $5,000,000, and a majority of their capital stock authorized to be issued, "said stock to remain in the control of said party of the second part [J. & W. Seligman & Co.] for the term of one year at least." The latter agreed to purchase two thousand tons of railroad iron under the railroad company's direction, and from time to time to make advances of cash during the completion of the road, not exceeding $200,000 (including the amount paid for iron), and to receive interest thereon at the rate of seven per cent per annum until reimbursed by sale of the bonds. They were to have the privilege for the term of twelve months of calling any portion of the $5,000,000 of bonds at the rate of seventy cents currency and accrued interest less two and a half per cent, and if more bonds were sold than enough to iron the road, they should advance funds to purchase rolling-stock $2,000 per mile, the balance to remain with them on deposit on interest at the rate of call loans to pay any deficiency in net earnings of the road to meet demands for interest on the bonds. If the bonds, or part of them, could not, for any unforeseen cause, be negotiated during the next twelve months, the company were to repay to J. & W. Seligman & Co. all moneys advanced by them with interest at the rate of seven per cent per annum and a commission of two and a half per cent on all bonds returned. This is the purport of the written agreement.
>
> On the lst of May, 1872, a trust deed was executed by the company on its railroad and appurtenances to Jesse Seligman and John H. Stewart, trustees, to secure the company's bonds. On the 11th of May, 1872, the following resolution of the directors was passed: "It is ordered by the board of directors that in making negotiations for money with J. & W. Seligman & Co., certificates for a majority of the capital stock of this company be issued to the said J. & W. Seligman & Co., to hold in trust for

> the period of twelve months, and that such certificates be signed by the president and secretary, with the corporate seal of this company affixed." A stock certificate for sixty thousand shares, or $6,000,000, was accordingly issued in the usual form to J. & W. Seligman & Co. This certificate was delivered to the defendants, but the court finds that they never subscribed for the stock, nor agreed to do so, and obtained it only in the manner set forth. The list of stockholders on the stock-book of the company, required by law to be kept, contains the names of certain townships which contributed aid to the road, and several individuals, including J. & W. Seligman, but not the amount of shares held. The stock transfer-book (also required by law) contained the same list, with date, number of shares, and amount carried out opposite to each name. . .
>
> Afterwards, on June 14, 1872, Burgess entered into a contract with the railroad company for the construction of the road from Carthage, Mo., to Independence, Kansas. He immediately began work under the contract, and so continued until the fall of 1873.
>
> The bonds of the company to the amount of $864,000 were issued, and were negotiated and sold by J. & W. Seligman & Co., they themselves becoming holders of over $400,000 thereof.
>
> The stock issued to them was voted on by proxy at two successive annual meetings for election of directors. . .

*Burgess v. Seligman*, Id. 107 U.S. 20-25; 2 S. Ct. 10-14 (1883) (Ex. 14).

23. The Memphis, Carthage and Northwestern Railroad Company ultimately became insolvent in or about 1874. The Supreme Court stated,

> The company [M. C. & N. R. R.] being unable to meet its interest on the bonds, the road and property were delivered to the trustees of the mortgage and sold in December, 1874, and Joseph Seligman and Josiah Macy, as a bondholder's committee, became purchasers thereof, and the railroad corporation was dissolved in conformity with the laws of Missouri about the same time.

*Burgess v. Seligman*, Id. 107 U.S. 20, 25; 2 S. Ct. 10, 14, L.Ed. 359, 362 (1883).

(Ex. 14).

24. Subsequent to the insolvency of railroad in or about 1874, the Jasper County, Missouri Circuit Court, in a case styled *Memphis, Carthage and North Western Rail Road Company, Plaintiff v. Evan Evans, et al., Defendants*, Case No. 905 entered a court

order in favor of the Memphis, Carthage and Northwestern Railroad Company dated March 13, 1876, therein appropriating a strip of land 100 feet wide over and through real estate located in Jasper County, Missouri and further ordered,

> The Plaintiff to have and to hold to its assigns the said *right of way and easement* over said property so long as the same shall be used for the purpose of said railroad.

(Jasper County Recorder of Deeds – Book 360 Page 57; 77-78; *Burgess v. Seligman,* Id. 107 U.S. 20, 25; 2 S. Ct. 10, 14, L.Ed. 359, 362 (1883)).

(Emphasis ours).

25. On the same day as the condemnation order in the previous paragraph, March 13, 1876, the Memphis, Carthage and Northwestern Railroad Company, in a case styled, *Memphis, Carthage and Northwestern Railroad Company v. John Elliott et al.*, the Circuit Court of Jasper County, Missouri, subsequent to the deposit of damages into the registry of the Court by the railroad, decreed,

> ". . . that the Plaintiff [M. C. & N. R. R.] may have, and take and appropriate to its own use as a *right of way* for its railroad a strip of land one hundred feet wide, that is fifty feet equi-distant from the center of the track of its railroad where the same is located, over and through the following described land, tract and parcels of land belonging to the persons named below to wit:
>
> . . . The South Half of Section Six (6) in Township Twenty-Eight (28) of Range Thirty-three (33) the property of Defendant H. C. Young
>
> . . . The Plaintiff to have and to hold the easement of right of way to itself, its successors and assigns as against said defendants, their heirs and assigns as long as the same shall be used for the purpose of Railroad
>
> (Emphasis ours).

(Jasper County Circuit Court Order – March 13, 1876; Ex. 13).

26. The Missouri and Western Railway Company, a Missouri corporation formed on March 22, 1845, purchased the assets of Memphis, Carthage and Northwestern Railroad Company from Joseph Seligman and the heirs of Josiah Macy, Jr. on February 7, 1877. The Missouri and Western Railway Company was sold to the St. Louis and San Francisco Railway Company, formed under Missouri law on September 10, 1876, on July 26, 1879. The St. Louis and San Francisco Railway Company was sold to the San Francisco Railroad Company ("Frisco") on June 30, 1896. (www.tacnet.missouri.org/history/railroads/ch_slsf; St. Louis and San Francisco Railway Interstate Commerce Commission Valuation Reports; Missouri Secretary of State Charter No. R00000180).

27. The Memphis, Carthage and North Western Rail Road was the predecessor of the St. Louis and San Francisco Railway Company ("SLSF"). In 1980, the SLSF merged into the Burlington Northern Railroad Company ("BN"). The BN subsequently merged with the Atchison, Topeka and Santa Fe Railway in 1995 to become the Burlington Northern and Santa Fe Railway Company ("BNSF"). (Admission of Defendant – Defendant's Answer ¶ 11, Plaintiff's Complaint ¶ 11).

28. Since the merger with Frisco and BNSF, the BNSF operated, *inter alia,* a railroad line between mile post 343.55 in Columbus, Cherokee County, Kansas, through and including mile post 315.30 (the "Line") in Carthage, Jasper County, Missouri. (Admission of Defendant – Defendant's Answer ¶ 12, Plaintiff's Complaint ¶ 12).

**III. EXCERPTS FROM THE REAL PROPERTY ABSTRACTS OF THE DISTRICT UNDERLYING ITS PROPERTY OWNERSHIP CLAIMS IN THE PRESENT ACTION.**

29. The City of Carl Junction, founded in 1877 by Charles L. Skinner, is generally located in the Twin Groves Township, Jasper County, Missouri. It may be found, by metes and bounds description, in Township No. 28 North and Range 33 West. The Plaintiff District is located within the city limits of Carl Junction, Jasper County, Missouri. (www.rootsweb.com/~mojasper/jcpage; "*An Illustrated Historical Atlas Map of Jasper County, Missouri* – 1876", Brink, McDonough & Co., Reprints Vol. 6, Green County Archives Bulletin No. 43; Ex. 2 – 5, 15, 16).

30. On June 14, 1876, Charles L. Skinner purported to convey, by warranty deed, to Joseph Seligman and Josiah Macy, Jr., for consideration of $100, property described verbatim in the warranty deed as,

> "A strip of land one hundred (100) feet wide, being fifty feet equi-distant from the center of the railroad track of the railroad owned and operated by parties of the second part known as M.C. & N.W.R.R. where the same is located and constructed over and through the following described large tracts of land to wit: The S.W. (¼) Quarter of Section (5) Five, the South (½) of Section (6) Six and the North (½) half of Section (7) Seven, all in Township (28) Twenty-Eight and Range (33) Thirty-Three.

The warranty deed was filed of record December 6, 1876.

(General Warranty Deed – Jasper County, Missouri Recorder of Deeds Book 39, Page 258 (Ex. 17, 18); District Abstract of Title, Entry No. 53 (Ex. 19)).

31. A map of the real property owners in 1876 Jasper County, Missouri for the East (½) of the Southwest (¼) and the West (½) of the Southeast (¼) of Section 6, Township 28, Range 33 and the East (½) of the Northwest (¼) and the West (½) of the Northeast

(¼) of Section 7, Township 28, Range 33 show ownership of these parcels, at the time of publication of the map, in an individual known as Henry C. Young.

(“*An Illustrated Historical Atlas Map of Jasper County, Missouri* – 1876”, Brink, McDonough & Co., Reprints Vol. 6, Green County Archives Bulletin No. 43; Ex. 16.)

32. Henry C. Young obtained a sheriff’s deed on October 9, 1866 to property described as the East (½) of the Southwest (¼) and the West (½) of the Southeast (¼) of Section 6, Township 28, Range 33 and the East (½) of the Northwest (¼) and the West (½) of the Northeast (¼) of Section 7, Township 28, Range 33.

(Deed – Jasper County, Missouri Recorder of Deeds, Book G, Page 709-10; District Abstract of Title, Entry No. 16 (Ex. 20)).

33. Henry C. Young further obtained a Quit Claim Deed on February 19, 1870 from D. B. Challes and his wife to property described as the East (½) of the Southwest (¼) and the West (½) of the Southeast (¼) of Section 6, Township 28, Range 33 and the East (½) of the Northwest (¼) and the West (½) of the Northeast (¼) of Section 7, Township 28, Range 33.

(Deed – Jasper County, Missouri Recorder of Deeds, Book R, Page 299-300; District Abstract of Title, Entry No. 18 (Ex. 21).

34. Henry C. Young and his wife sold the real property described in previous paragraphs 31-33 by Quit Claim Deed to Augustus Knight dated June 13, 1876 and filed on June 27, 1876.

(Deed – Jasper County, Missouri Recorder of Deeds, Deed Record 37, Page 505 (Exhibit 22); District Abstract of Title, Entry No. 19 (Ex. 22); see also Entry Nos. 20, 21 – (Ex. 23)).

35. David C. Skinner, the father of Charles L. Skinner, first obtained interest in real property by Order of the Jasper County, Missouri Circuit Court on June 15, 1866 wherein the Court granted D. C. Skinner a deed to real property described as Lot 2 Southwest (¼) of Section 6, Township 28, Range 33 and the West (½) of the Northwest Quarter of Section 7, Township 28, Range 33.

(Court Order – Jasper County, Missouri Court Book "E", Page 69 (Ex. 24); Deed Record "K", Page 117; District Abstract of Title, Entry No. 49-50, 52 (Ex. 24); Quit Claim Deed (Ex. 25); see also Entry Nos. 51-52).

36. David C. Skinner sold real property to his son, Charles L. Skinner, on October 17, 1874 by warranty deed recorded October 21, 1874 and described as the South (½) Lot 2 , Southwest (¼) of Section 6, Township 28, Range 33 and the West (½) of the Northwest (¼) of Section 7, Township 28, Range 33.

(Deed – Jasper County, Missouri Recorder of Deeds, Deed Record 31, Page 556 (Ex. 26); District Abstract of Title, Entry No. 51 (Exhibit 26)).

37. Charles L. Skinner sold real property to Marcus D. L. Van Tine on May 29, 1880 by warranty deed recorded on May 9, 1884 and described as "all of the South (½) of Lot 2 Southwest (¼) Section 6, lying north of St. L. & S. F. R. R. *right of way*, also all that part of Northwest (¼) Section 7, lying North of St. L. S. F. R. R. *right of way*, all in Township 28, Range 33".

(Deed – Jasper County, Missouri Recorder of Deeds, Deed Record 70, Page 512 (Exhibit 27); District Abstract of Title, Entry No. 54 (Exhibit 27)).

38. A map of the real property owners in 1876 Jasper County, Missouri for the East (½) of the Southwest (¼) and the West (½) of the Southeast (¼) of Section 6, Township

28, Range 33 and the East (½) of the Northwest (¼) and the West (½) of the Northeast (¼) of Section 7, Township 28, Range 33 show ownership of these parcels, at the time of publication of the map, in an individual known as Henry C. Young, exclusive of any ownership rights, interest or entitlement by either David C. Skinner or Charles L. Skinner.

**(**"*An Illustrated Historical Atlas Map of Jasper County, Missouri* – 1876", Brink, McDonough & Co., Reprints Vol. 6, Green County Archives Bulletin No. 43; Exhibit 16.

39. Neither David C. Skinner nor Charles L. Skinner possessed any legal right, claim or interest to real property described as the East (½) of the Southwest (¼) and the West (½) of the Southeast (¼) of Section 6, Township 28, Range 33 and the East (½) of the Northwest (¼) and the West (½) of the Northeast (¼) of Section 7, Township 28, Range 33.

(Jasper County, Missouri Recorder of Deeds, Book G, Page 709; District Abstract of Title, Entry No. 16 (Ex. 20); Deed – Jasper County, Missouri Recorder of Deeds, Book R, Page 299; District Abstract of Title, Entry No. 18 (Ex. 21); Court Order – Jasper County, Missouri Recorder of Deeds, Court Book "E", Page 69; Deed Record "K", Page 117; District Abstract of Title, Entry No. 49-50 (Ex. 25); see also Entry Nos. 51-52 – (Ex. 26-7); Deed – Jasper County, Missouri Recorder of Deeds, Deed Record 31, Page 556; District Abstract of Title, Entry No. 51 (Ex. 26)).

40. Neither David C. Skinner nor Charles L. Skinner, at any time possessed any undivided, exclusive interest to convey real property to Joseph Seligman and Josiah Macy, Jr. described in the Deed at Jasper County, Missouri Recorder of Deeds Book 39, Page 258 as,

> "A strip of land one hundred (100) feet wide, being fifty feet equi-distant from the center of the railroad track of the railroad owned and operated by parties of the second part known as M.C. & N.W.R.R. where the same is located and constructed over and through the following described large tracts of land to wit: The S.W. (¼) Quarter of Section (5) Five, the South (½) of Section (6) Six and the North (½) half of Section (7) Seven, all in Township (28) Twenty-Eight and Range (33) Thirty-Three.

(Ex. 15-27; Jasper County, Missouri Recorder of Deeds, Book G, Page 709; District Abstract of Title, Entry No. 16 (Ex. 20); Deed – Jasper County, Missouri Recorder of Deeds, Book R, Page 299; District Abstract of Title, Entry No. 18 (Ex. 21); Court Order – Jasper County, Missouri Recorder of Deeds, Court Book "E", Page 69; Deed Record "K", Page 117; District Abstract of Title, Entry No. 49-50 (Ex. 25); see also Entry Nos. 51-52 – (Ex. 26-7); Deed – Jasper County, Missouri Recorder of Deeds, Deed Record 31, Page 556; District Abstract of Title, Entry No. 51 (Ex. 26)).

41. The Memphis, Carthage and Northwestern Railroad Company, as a Missouri corporation, did not purchase any real property from either David C. Skinner or Charles L. Skinner.

(Jasper County, Missouri Recorder of Deeds, Book G, Page 709; District Abstract of Title, Entry No. 16 (Ex. 20); Deed – Jasper County, Missouri Recorder of Deeds, Book R, Page 299; District Abstract of Title, Entry No. 18 (Ex. 21); Court Order – Jasper County, Missouri Recorder of Deeds, Court Book "E", Page 69; Deed Record "K", Page 117; District Abstract of Title, Entry No. 49-50 (Ex. 25); see also Entry Nos. 51-52 – (Ex. 26-7); Deed – Jasper County, Missouri Recorder of Deeds, Deed Record 31, Page 556; District Abstract of Title, Entry No. 51 (Ex. 26)).

42. Neither Joseph Seligman nor Josiah Macy, Jr. were stockholders of the Memphis, Carthage and Northwestern Railroad Company.

> The next and principal question is, whether J. & W. Seligman & Co., or J. & W. Seligman, were stockholders of the Memphis, Carthage, and Northwestern Railroad Company, within the meaning of the law. Did the sixty thousand shares of stock belong to them? or did they hold it by way of trust or as collateral security for the fulfilment of the company's obligations in relation to the bonds? . . . *Upon a careful examination of the facts found in this case we do not see how a reasonable doubt can exist, that the Seligmans held the stock in question as trustees and custodians by way of collateral security for themselves and the purchasers of the bonds.* That was clearly the intent of the parties, declared in almost so many words; and that intent must prevail . . .

(*Burgess v. Seligman*, Id. 107 U.S. 20, 26-7; 2 S. Ct. 10, 15-6, L.Ed. 359, 362-3 (1883).

(Emphasis ours)).

Respectfully Submitted,

_s/s R.Deryl Edwards, Jr.___________________________

LAW OFFICES OF R. DERYL EDWARDS, JR
R. Deryl Edwards MO# 48277
606 S. Pearl
Joplin, MO 64801-2582
(417) 624-1962
(417) 624-3151
rde417@hotmail.com

and

RICHART LAW OFFICES
Robert W. Richart Mo Bar #18917
L. Dean Wilson #39356
610 Pearl, Suite C
Joplin, Missouri 64801
Phone: 417-781-6770
Fax: 417-781-7554
richartlaw@hotmail.com
ATTORNEYS FOR PLAINTIFF