IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CARL JUNCTION R-1 SCHOOL DISTRICT,<br><br>Plaintiff, | ) | |
| vs. | ) | Case No.: 05-3L<br>Judge Robert H. Hodges, Jr. |
| UNITED STATES OF AMERICA,<br><br>Defendant, | ) | |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

Comes Now the Plaintiff, the Carl Junction R-1 School District, by and through its counsel, pursuant to Ct. Claims Rule 56(h)(2), and herewith submits its Suggestions in Opposition to Defendant United States' Motion for Summary Judgment as follows:

## INTRODUCTION

The Plaintiff, Carl Junction R-1 School District (the "District"), and the Defendant, United States, simultaneously filed dispositive motions for summary judgment by the Court's deadline on May 26, 2006 (Doc. # 26, 28-30). The Plaintiff, using primarily documents produced to the Government previously, asserts it has met the summary judgment standards applicable to its Tucker Act condemnation claims as set forth in its Complaint as the undisputed facts arguably support the District's property interest existing at the time of the issuance of the NITU. The Defendant Government takes the position that the District does not have a property interest due to a transaction occurring on or about June 14, 1876 whereby the Defendant claims the landowner sold the 100 foot right-of-way to individuals whom were operating as a railroad.

The Plaintiff, utilizing recorded deeds it uncovered in reviewing local records in the Jasper County, Missouri Recorder of Deeds Office (see Plaintiff's Exhibits 18, 20 – 27) and District abstracts (see Exhibits 19, 21 – 27), uncovered a fact that it asserts moots the Government's position. The Plaintiff submits that the transaction on which the Government relies (see Defendant's Summary Judgment Exhibit 2) is ineffectual because Charles Skinner, as Seller, did not own or possess the majority of the South half (½) of Section 6, Township 28, Range 33 in Jasper County, Missouri at the time of the transaction purportedly made to Joseph Seligman and Josiah Macy, Jr., as Buyers, on June 14, 1876. Consequently, Plaintiff's argument is that Charles Skinner could not convey what is now the District's property as he did not have the legal right to transfer the property as a matter of law.

The District likewise submits that the Government's position that the June 14, 1876 Warranty Deed (Defendant's Ex. 1, 2; see also Plaintiff's Ex. 17, 18, 19 et al.) "unambiguously conveyed a fee simple interest to the railroad" (Doc. # 26, p. 5) is clearly erroneous for several reasons. As detailed hereinbelow, Charles Skinner could not convey property or interests to Seligman and Macy for which he did not own. It follows that Seligman and Macy were individual speculators and entrepreneurs, but were not a "railroad" to deprive the District of entitlement to recover for the condemnation which occurred by the issuance of the NITU.

**<u>SUMMARY JUDGMENT LEGAL STANDARDS GOVERNING THE DISTRICT'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S DISPOSITIVE MOTION</u>**

The District's Response in Opposition to the Government's Summary Judgment is governed by Court of Claim Rule 56(h)(2) which states,

> (h) Procedures. The following procedures shall be followed with respect to motions for summary judgment:
>
> (1) The moving or cross-moving party shall file, together with its motion, a separate document titled Proposed Findings of Uncontroverted Fact. This document shall contain concise, separately numbered paragraphs setting forth all of the material facts upon which the party bases its motion and as to which the party believes there is no genuine dispute. Each paragraph shall contain citations to the opposing party's pleadings or to documentary evidence, such as affidavits or exhibits, filed with the motion or otherwise part of the record in the case.
>
> (2) The opposing party shall file, together with its opposition, a response to the requested findings by indicating, immediately below each finding, whether it agrees or disagrees with the finding as stated. If the opposing party does not agree with the proposed finding, it shall note the basis for its objection and may draft a proposed revision of the finding directly below the challenged finding. The opposing party may also file proposed findings of uncontroverted fact as to any relevant matters not covered by the moving party's statement. Such additional statements of proposed findings shall be set forth with the proposed findings applicable to any cross-motion, but in the absence of a cross-motion shall be set forth in a separate document. Responses to such additional proposed findings shall be filed in a format which conforms to the instructions noted above.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED STATEMENTS OF UNCONTROVERTED FACTS**

1. The warranty deed at issue in Defendant's Motion was identified by reviewing a document prepared in 1918 titled "Lands Owned or Used for Purposes of a Common Carrier" ("Val Schedule") (attached as "Def.'s Ex. 1" to Defendant's Motion). On that document, parcel No. 4 corresponds to the piece of the right-of-way abutting Plaintiffs Carl Junction R-1 School District's ("Carl Junction") property. The two title documents listed for Parcel No. 4 are a condemnation decree and the warranty deed. See Def.'s Ex. 1.

CONTROVERTED.

The Plaintiff objects to the use of the 1918 document (Def.'s Ex. 1) as it contains multiple hearsay statements. However, without waiving these objections, Parcel No. 4 of the Defendant's Exhibit (Custodian's No. 14643) identifies "H. C. Young" as the grantor to the M.C. & N.W. R. Co. ("Memphis, Carthage and Northwestern Railroad Company") by means of the condemnation decree dated March 13, 1876 (see Def.'s Ex. 3; Pltf.'s Ex. 13, p. 4, ¶ 3; Ex. 20-23) which the 1876 Court stated in the decree the following in relevant part,

> ". . . that the Plaintiff [M. C. & N. R. R.] may have, and take and appropriate to its own use as a *right of way* for its railroad a strip of land one hundred feet wide, that is fifty feet equi-distant from the center of the track of its railroad where the same is located, over and through the following described land, tract and parcels of land belonging to the persons named below to wit:
>
> . . . *The South Half of Section Six (6) in Township Twenty-Eight (28) of Range Thirty-three (33) the property of Defendant H. C. Young*

> . . . The Plaintiff to have and to hold the easement of right of way to itself, its successors and assigns as against said defendants, their heirs and assigns as long as the same shall be used for the purpose of Railroad
>
> (Emphasis ours).

(Jasper County Circuit Court Order – March 13, 1876; Ex. 13).

The "deed" identified by Defendant's Exhibit 1 is the deed acquired by Seligman and Macy from Charles Skinner on June 14, 1876. The March 13, 1876 Court decree identified H.C. Young as the owner of the South half of Section 6, Township 28, Range 33 in Jasper County, Missouri and there are no documents indicating a transfer of property from H.C. Young or Augustus Knight to Charles Skinner or D.C. Skinner after March 13, 1876. The most property in Section 6 ever owned by David Skinner or Charles Skinner was "Lot 2 Southwest Quarter of Section 6". In any case, Charles Skinner did not own the "South (½) of Section 6" (see Pltf.'s Ex. 17 – 19) to convey to Joseph Seligman and Josiah Macy, Jr.

The Plaintiff incorporates by reference paragraphs 25 and 30 – 38 of its Statements of Uncontroverted Fact.

2. At Defendant's request, Carl Junction obtained and provided to Defendant a copy of the warranty deed, dated June 14, 1876, as recorded at the Jasper County Recorder of Deeds office in Carthage, Missouri (attached as "Def.'s Ex. 2" to Defendant's Motion). Defendant obtained a copy of the condemnation decree, dated March 13, 1876, from the Burlington Northern Santa Fe Railway Company, the last railroad company to provide rail service on the right-of-way ( attached as "Def.'s Ex. 3" to Defendant's Motion).

UNCONTROVERTED.

3. The warranty deed, like the condemnation decree, describes the portion of the railroad right-of-way that borders Carl Junction's property that is located in the southern half of Section 6, Township 28, Range 33, in Jasper County, Missouri. See Def.'s Ex. 2 at D2001 and Def.'s Ex. 3 at D3004. The grantees of the deed are Joseph Seligman and Josiah Macy, Jr., the owners and operators of the Memphis, Carthage and Northwestern Railroad Company, Burlington Northern Santa Fe Railway Company's predecessor-in-interest. Def.'s Ex. 2 at D2001; Complaint ¶ 11.

CONTROVERTED.

The Plaintiff does not controvert the legal description as contained on the deed and the decree, however, the warranty deed purports to convey property the Seller, Charles Skinner, did not own in the first instance. The Plaintiff incorporates by reference its response to Defendant's Statement of Fact # 1 as though more fully set forth herein. See also Plaintiff's Ex. 16.

The Plaintiff also controverts the Defendant's characterization of Joseph Seligman and Josiah Macy, Jr. as "the owners and operators of the Memphis, Carthage and Northwestern Railroad Company". The U. S. Supreme Court in *Burgess v. Seligman,* 107 U.S. 20; 2 S. Ct. 10; 27 L. Ed. 359 (1883) characterized Seligman and Macy and their lack of relationship with the Memphis, Carthage and Northwestern Railroad Company (which ultimately became insolvent in or about 1874) thusly:

> The company [M. C. & N. R. R.] being unable to meet its interest on the bonds, the road and property were delivered to the trustees of the mortgage and sold in December, 1874, and Joseph Seligman and Josiah Macy, as a bondholder's committee, became purchasers thereof, and the railroad corporation was dissolved in conformity with the laws of Missouri about the same time.

*Burgess v. Seligman*, Id. 107 U.S. 20, 25; 2 S. Ct. 10, 14, L.Ed. 359, 362 (1883). (See Pltf.'s Ex. 14). The Corporate documents involving the Memphis, Carthage and Northwestern Railroad Company evidence that neither Joseph Seligman nor Josiah Macy, Jr. served as an incorporator, officer, director or stockholder of the railroad. (Plntf.'s Ex. 5 – 7). Furthermore, the railroad had become insolvent in 1874, approximately two years before the Skinner – Seligman/Macy transaction. (See Plntf.'s Ex. 14).

4. In the warranty deed's granting clause, the grantor agreed to "**Grant, Bargain and Sell, Convey and Confirm**, unto [the owners of the railroad] the following described Lots, Tracts or parcels of Land, lying, being and situate in the County of Jasper and State of Missouri, to wit: [legal description]." Def.'s Ex. 2 at D2001 (emphasis in the original).

CONTROVERTED, IN PART.

The Plaintiff does not controvert the wording of the clause, but controverts Seligman and Macy as the "[owners of the railroad]" and the fact that Skinner did not own the South half of Section 6 to convey to Seligman and Macy. Plaintiff incorporates by reference its responses and Exhibits stated in response to Statement of Facts 1 and 3, respectively.

5. The warranty deed recites consideration of $100. Def.'s Ex. 2 at D2001.

CONTROVERTED, IN PART.

The Plaintiff does not controvert the recited consideration in the deed, however, again controverts the property recited by the seller in the deed as owned by him. The

Plaintiff incorporates its response to Statement of Fact 1 as though more fully set forth herein.

6. The habendum clause in the warranty deed states:

> **To Have and To Hold** The Premises aforesaid, with all and singular the rights, privileges, appurtenances and immunities thereto belonging, or in anywise appertaining unto the party of the [owners of the railroad], and unto their heirs and assigns and successors FOREVER; the [landowner] hereby covenanting that he is lawfully seized of an indefeasible ESTATE IN FEE in the premises herein conveyed; the he has good right to convey the same; that the said premises are free and clear of any encumbrance done or suffered by him or those under whom he claims; and that he will **Warrant and Defend** the title to the said premises unto the [owners of the railroad], and unto their heirs and assigns FOREVER, against the lawful claims and demands of all persons whomsoever.

Def.'s Ex. 2 at D2002.

CONTROVERTED, IN PART.

The Plaintiff does not controvert the recited clause in the deed, however, again controverts the property recited by the seller in the deed as owned by him. The Plaintiff incorporates its response to Statement of Fact 1 as though more fully set forth herein.

The Plaintiff also controverts Seligman and Macy as the "[owners of the railroad]". Plaintiff incorporates by reference its responses and Exhibits stated in response to Statement of Fact 3.

## ARGUMENTS AND AUTHORITIES

### I. THE GOVERNMENT'S POSITION THAT THE JUNE 14, 1876 WARRANTY DEED FROM CHARLES SKINNER TO JOSEPH SELIGMAN AND JOSIAH MACY, JR. "UNAMBIGUOUSLY CONVEYED A FEE SIMPLE INTEREST TO THE RAILROAD" IS CLEARLY ERRONEOUS AND OTHERWISE FATALLY FLAWED.

The Government principally relies upon the June 14, 1876 Warranty Deed (Defendant's Exhibit 2; Plaintiff's Ex. 17 – 20) to support its argument that the deed, by which Charles Skinner purported to sell the 100 foot of railroad right-of-way to Joseph Seligman and Josiah Macy, Jr., deprives the District of any property ownership interest. The Government has misinterpreted the material operative facts and has otherwise erroneously applied the law of the case.

The Government's reliance upon the Skinner – Seligman Macy transaction of June 14, 1876 is misplaced for several reasons. It is ironic that Defendant's first exhibit comes from the Burlington Northern Santa Fe Railway Company archives, or rather from the archives of its immediate predecessor, the St. Louis San Francisco Railway Company ("Frisco"). It is further irony that the document that the Government uses in support of its dispositive motion, the Frisco ICC Valuation, may very well doom its litigation position.

The Government cites Parcel 4 as evidence of how, in antiquity, the Frisco acquired property rights abutting the District. However, Def.'s Ex. 1 also provides compelling evidence which has or should have been appreciated by the Government from the initiation of this case. The Memphis, Carthage and Northwestern Railway Company filed a condemnation action, paid money into the registry of the Jasper County, Missouri Circuit Court for prospective awards and, even after it was insolvent and its assets turned

over to it lender, Seligman & Company in or about in 1874, on March 13, 1876, the Jasper County Court entered a decree to the railroad's benefit which has resounding impact 130 years later.

The Court did not award any condemnation claim to Charles Skinner, at least by review of the Frisco exhibit (Def.'s Ex. 1). That omission in the railroad property record is telling – Charles Skinner had no part in the property in which H.C. Young owned at the time of the condemnation decree. Even if Charles Skinner did, which Plaintiff denies, the Government argues that the condemnation decree and the June 14, 1876 warranty deed are "title documents" to "the right-of-way abutting . . . [the] District's property" (Def.'s Proposed Finding No. 1; p. 1). Plaintiff can agree with part of the statement – H.C. Young was explicitly a titled beneficiary of the Court's March 13, 1876 decree as the owner of the South half of Section 6, Township 28, Range 33 in Jasper County, Missouri – the same property on which the District property now sits.

There appears to be a "missing link" between the March 13, 1876 condemnation decree and the June 14, 1876 warranty deed transaction. How is it that Charles or David Skinner acquired an interest in the South half of Section 6 prior to condemnation or thereafter. Obviously, one of the documents granting interest in the South half of Section 6 must be in error. Even cursory review would compel this Court to reach a conclusion, perhaps a conclusion mixing fact and law, that Charles Skinner did not possess legal right to convey to Seligman and Macy an interest in the entirety of the South half of Section 6.

As a preliminary matter, the absence of a record before the Court is possibly as compelling as the converse. There are no documents extant, at least as between the District, the railroad and the Government, that show any transaction between H.C. Young

and Charles or David Skinner after the condemnation decree of March 13, 1876 and before the June 14, 1876 warranty deed or thereafter. The warranty deed also is absent any transfer of any other property in the South half of Section 6 other than the 100 foot right-of-way to Seligman and Macy purportedly owned by Charles Skinner.

The Plaintiff attempted to support its argument that Charles Skinner overstepped his legal ability to convey a 100 foot strip of land over the entirety of the South half of Section 6 to Seligman and Macy by analyzing the history of the acquisition of property by both H.C. Young and the Skinners. Plaintiff set out exhibits in the District's abstract, completely produced to the Government months ago, that details the material transactions – transactions that clearly and definitely belie the Government's position that the District does not possess a legally cognizable property interest in this proceeding.

H.C. Young obtained an interest in the property over which the District property now is situated in 1870 by quit claim deed. He obtained interest in the East half of the Southwest Quarter and the West half of the Southeast Quarter of Section 6 on February 19, 1870 and sold his interest on June 13, 1876 to Augustus Knight. See Plntf.'s Ex. 21, 22, 23. H.C. Young owned the land when an 1876 plat map of Jasper County, Missouri was printed (Plntf.'s Ex. 16 – 17). As stated above, H.C. Young is referenced on the Court decree of March 13, 1876 as owning the majority of the South half of Section 6.

On the other hand, David Skinner and Charles Skinner, at best, acquired what could be described as bookends on the South half of Section 6 – but nothing more. Plaintiff's Exhibits 16 – 17 and 24 – 27 support the obvious conclusion that the Skinners never owned the entirety of the South half of Section 6. Consequently, Charles Skinner

could never convey the rights to the entire South half of Section 6 to Joseph Seligman or Josiah Macy, Jr., on June 14, 1876 or otherwise.

The Plaintiff would also point out the fallacy of the Government's position concerning the relationship of Joseph Seligman and Josiah Macy, Jr. and the Memphis, Carthage and Northwestern Railroad Company ("railroad"). The Government would have the Court believe that Seligman and Macy *were* the railroad. It serves the Government's purpose, because their argument would be that the Skinner to Seligman and Macy transaction was really as a nominee of the railroad. Essentially, their argument continues, Skinner sold the right-of-way through the South half of Section 6 to the railroad through Seligman and Macy. These arguments fail for several reasons.

The railroad became insolvent and transferred the assets to Seligman & Company in or about 1874 – approximately two years before the condemnation decree and the warranty deed transaction – both occurring in 1876. Seligman and Macy were trustees for Seligman & Company, the railroad's secured lender. Civil cases sprang up in several jurisdictions against Joseph Seligman and Josiah Macy, Jr. individually for years thereafter, the unfortunate labor, materials and other unpaid vendors seeking recovery against Seligman and Macy because the railroad was insolvent. Unbeknownst to these creditors, Seligman and Macy individually bought the land from Skinner, all the while attempting to elude the debts of the railroad corporation from personal liability. Several of the cases reached the highest Court in the land, and, for the most part, Seligman and Macy escaped personal liability. Why then would Seligman and Macy risk personal liability to operate as the railroad? The answer to the question is clear – Seligman and Macy steered away from any activity that would compromise their activity and hitching

themselves to the wagon of a defunct railroad with numerous creditors at their heels would bring too much attention and expense.

The Plaintiff submits that Seligman and Macy were not operating the railroad. In fact, it may well be that the Federal and state case law operates to a preclusive effect on any suit, claim or issue as their individual liability had already been decided in the negative. In other words, res judicata and/or collateral estoppel may well operate to bar relitigation of the issues in the present case.

## CONCLUSION

The Plaintiff requests the Court overrule the Government's Motion for Summary Judgment for the reasons set forth herein and elsewhere in the record and for such other and further reasons as this Court deems just and equitable.

Respectfully Submitted,

s/ R. Deryl Edwards, Jr.
LAW OFFICES OF R. DERYL EDWARDS, JR
R. Deryl Edwards MO# 48277
606 S. Pearl
Joplin, MO 64801-2582
(417) 624-1962
(417) 624-3151
rde417@hotmail.com

and

RICHART LAW OFFICES
Robert W. Richart Mo Bar #18917
L. Dean Wilson #39356
610 Pearl, Suite C
Joplin, Missouri 64801
Phone: 417-781-6770
Fax: 417-781-7554
richartlaw@hotmail.com
ATTORNEYS FOR PLAINTIFF